STATE v. LUCAS.

(Filed October 3, 1905).

*Justices of the Peace—Jurisdiction—New Trial—Former Conviction—Indictment.*

1. Where a justice of the peace heard a warrant charging the defendant with an assault, with serious damage, and adjudged that the accused give bond for his appearance and his bond was executed and accepted by the justice, the latter's power and jurisdiction ceased and his attempt to reverse his decision the next day and fine the defendant was a nullity.

2. There is no authority given to a justice of the peace to grant a new trial in a criminal case after he has made a final disposition of it.

3. The justice having no jurisdiction to try and convict the defendant after he had bound him to court, a plea of former conviction in the Superior Court was properly overruled, where the indictment alleged that there was serious damage, though the jury convicted of a simple assault merely.

INDICTMENT against J. H. Lucas, heard by *Judge O. H. Allen* and a jury, at the February Term, 1905, of Superior Court of SAMPSON County.

Defendant was indicted for assault with serious damage and pleaded former conviction and not guilty. The evi-

STATE *v.* LUCAS.

dence upon the former plea was that a warrant was issued by a justice of the peace charging defendant with an assault and battery on D. C. Bullard, resulting in serious injury. At the trial, the justice found that there was probable cause and required defendant to give bond for his appearance at the next term of the Superior Court. The bond was duly executed and accepted by the justice and the defendant discharged, all witnesses having been recognized for their appearance at court. No entry of these proceedings having been made on his docket, the justice, on the next day after the trial, concluded that he had made a mistake, reversed his decision and rendered judgment against defendant for a fine of $1 and costs. No one but the justice was present when this was done. Defendant, being notified of the judgment, appeared and paid the fine and costs, and the justice surrendered to him the appearance bond he had given. No papers were returned to the Superior Court as required by the statute. The witnesses appeared at court as they were recognized to do, and this bill of indictment was sent to the grand jury and returned "a true bill." The assault with serious damage was sufficiently charged in the indictment. Upon the foregoing facts the court adjudged that the plea had not been sustained as the judgment of the justice was a nullity. The case was then tried upon the plea of not guilty and the defendant was convicted of a simple assault. Defendant's counsel moved for his discharge upon the ground that the court erred in holding that there had been no former conviction. Motion denied. Judgment upon the verdict. Defendant excepted and appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*F. R. Cooper* for the defendant.

WALKER, J., after stating the case: The motion to discharge the defendant should not have been sustained. If the

ruling of the court was wrong, on the plea of former convic-
tion, the defendant was not entitled to a discharge but to a
new trial.   But we will treat the motion as if it had been for
a new trial, as perhaps it was so intended.

The ruling of the court that the judgment of the justice
was void, as he had no jurisdiction of the case after he had
bound the defendant to court and taken his recognizance,
was manifestly correct.   The statute requires that when the
justice has no final jurisdiction of the offense "he shall de-
sist from any final determination" of the matter, and either
commit the accused to prison or require from him a recog-
nizance for his appearance at the next term of the court to
answer the charge, and he shall then bind the complainants
and witnesses for the State to appear in like manner and
testify.   He must then return the papers, with a statement
of his proceedings, to the clerk of the court on or before
the first day of the term.   Code, secs. 896, 1152, 1156, 1157.
This is plain language and its meaning is unmistakable.   It
was intended most surely that when the justice had fully
performed the duties required of him, his jurisdiction as to
the case should be at an end.   If he makes a mistake, it must
be corrected elsewhere—not in his court.   There is no pro-
vision of the statute, nor is there any in the general law,
for correction of his errors by himself after he has given
his decision and taken security for the appearance of the
accused.   To permit a justice, after an investigation and
decision by himself and after the discharge of the defendant
and the witnesses, all of whom have been recognized for their
appearance at court, to reverse his decision the next day
in the absence of the prosecutor, the witnesses and the de-
fendant, would be pernicious practice and tend to great con-
fusion in judicial proceedings, apart from other considera-
tions arising from the express provisions of the statute pre-
scribing the jurisdiction of justices of the peace and im-
pliedly forbidding any such proceeding.   It would open the

door wide to fraudulent and collusive prosecutions, pervert
the course of justice and defeat the very purpose which the
orderly method of procedure provided by the statute was in-
tended to subserve.

We are therefore of the opinion that when the justice
had heard the cause and adjudged that the accused give bond
for his appearance, and his bond was executed and accepted
by the justice, the latter's power and jurisdiction ceased.
The case had then passed beyond his control and he could
not reverse or change his decision or take any other steps
in the cause, except to return the recognizance and the papers,
together with a statement of his proceedings, to the clerk
of the court in obedience to the statute. There is no author-
ity given to a justice to grant a new trial in a criminal case
after he has made a final disposition of it. If he can re-
verse his judgment the day after it is given, he can do so
the next week, month or year. What the justice did the
day after the trial was therefore *coram non judice,* and his
former decision of the case was in no manner avoided or
affected thereby. The case then stood as if there had been
no subsequent proceedings. The views we have expressed
are fully sustained by *Steel v. Williams,* 13 Ind., 73, a case
directly in point, in which the very question herein pre-
sented is fully and ably discussed. Indeed, the authorities
upon the subject seem to be all one way, the judges and text
writers having spoken with one voice upon the subject. Bish-
op, in his New Criminal Procedure (4th Ed.), p. 141, section
234, subsection 4, says: "The magistrate, on determining
to send the prisoner to the higher court, commits him and
the witnesses, or takes their several recognizances, as the
case may require. Then, and in the absence of any special
statute, his functions in the case cease." He is in a certain
sense *functus officio.* Having fulfilled the particular func-
tions conferred by statute, he is consequently without further
official authority in the case. So in *Sandrock v. Knop,* 34

How. Pr. (N. Y.), 191, a case substantially identical in its facts with this one, the defendant was arrested and tried by the committing magistrate, a police justice, who required him to enter into a recognizance for his appearance. Afterwards, the justice proceeded to re-examine the case. He discharged the defendant and then ordered the appearance bond to be cancelled. It was held that the giving of the recognizance by the accused had the effect to divest the justice of all authority further to examine into the complaint, and that any further proceedings in the investigation of the alleged offense must be had at the general sessions to which court the defendant had been bound to appear, and before the grand jury. The subsequent proceedings were therefore held to be a nullity. More like our case in all respects than any other we have been able to find, is *State v. Mouseley,* 4 Harr. (Del.), 553, which was an indictment for assault. The accused was first bound to court by the justice who afterwards, with the consent of the prosecutor, allowed the matter to be settled on payment of costs. This was held to be beyond his jurisdiction and an unauthorized proceeding, and it was distinctly ruled that, when the committing magistrate holds the accused to bail or commits him for refusal to give bail for his appearance, there is no appeal from the justice and no authority anywhere to review his decision on this question, nor to prevent the case from going before the court after once there has been a judgment that it is a case which ought to be tried there. In *State v. Russell,* 24 Texas, 505, it was held that, after taking a bail-bond and the adjournment of his court, a magistrate has no authority to take further action in the case, as the jurisdiction of it is in the court to which the defendant has been bound for his appearance. The court held in *Nelson v. People,* 38 Mich., 618 (opinion by *Cooley, J.*), that holding an accused person for trial in the circuit court "undoubtedly" gave that court jurisdiction of the case. It was held in *State v. Randolph,* 26 Mo., 213,

that after the justice had issued his warrant of commitment to the sheriff, he could not recall it and take a recognizance, unless expressly empowered by statute so to do, as his authority was exhausted, and the defendant can be discharged only by *habeas corpus.* Our statute makes such provision (Code, sec. 1161), that is, that a justice or judge may take the recognizance. In our case the justice had already taken the bond. The case cited serves to illustrate the principle and to prove its general adoption in all systems of judicial procedure. *State v. Young,* 56 Me., 219, presented a peculiar application of the rule. It was there held that the recognizance returned to court might be amended so as to speak the truth, being a record, but that as, when amended, it showed the justice had taken it after once committing the defendant, it was void, as he was without authority to act in the matter or to supersede the further execution of the *mittimus*—his jurisdiction having been fully exercised and ended, when the officer received the defendant and departed with him from the court. But for our statute, to which we have referred, this would be the law here. The principle of the decision is still the law with us. In this case, the justice recognized the accused and then his jurisdiction ended. There was nothing more for him to do, or that he could do under the statute, as his jurisdiction in this respect is derived solely from the statute and must be exercised in accordance therewith. *State v. Jones,* 100 N. C., 438. We might cite numerous other cases to the same effect as those mentioned above, but it would be useless to do so, as those cited will suffice to show that the general current of authority has always strongly set in one and the same direction. Suppose the justice had originally assumed final jurisdiction which he possessed and fined the defendant, could he the next day or the next week have set aside the judgment, renounced his final jurisdiction and recognized the defendant to appear at the next term of the court? Certainly he could not. So plain a proposition

STATE *v.* LUCAS.

does not admit of argument. So it must be, in either case, that when he has fully exercised his jurisdiction he has reached the limit beyond which he cannot go, nor can he retrace his steps.

If the justice had taken final jurisdiction when the case was first heard by him and disposed of it, the plea of former conviction would have been a complete bar to the prosecution in the Superior Court, as the jury by their verdict found that there was no serious damage done. *State v. Albertson,* 113 N. C., 633; *State v. Price,* 111 N. C., 703. But as the justice had no jurisdiction to try and convict the defendant after he had bound him to court, and as the indictment alleged that there was serious damage, though the jury convicted of a simple assault merely, the plea was bad and was properly overruled by the court. As the Superior Court had jurisdiction of the case by reason of the form of indictment, it proceeded rightly to pronounce judgment upon the verdict. *State v. Ray,* 89 N. C., 587; *State v. Ernest,* 98 N. C., 740; *State v. Fritz,* 133 N. C., 725.

There is no direct authority to be found in the decisions of this court upon the question discussed. The general observations made in *State v. Moore,* 136 N. C., 581, will be found to have an indirect bearing upon the matter. The second, or rather the pretended trial, did not have the true form of a judicial investigation or inquiry, nor even its semblance. What is said in that case is therefore applicable to this one. We again call the attention of the justices of the peace to the suggestions made in *State v. Moore,* and to the necessity of carefully observing the directions of the statute, and now, we add, of keeping strictly within the bounds of the jurisdiction thereby conferred. Departures from the beaten path, if permitted, will open a way by which criminals may escape merited punishment with impunity. *State v. Jones, supra.*

The record discloses no error committed in the trial below.
No Error.